IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Nationwide Mutual Fire Insurance Company and Nationwide Property and Casualty Insurance Company, <br><br> Plaintiffs, <br><br> v. <br><br> Neetu, Inc., Mundrey, Inc., and Glenn Tilling, Individually and as Personal Representative of the Estate of Christopher William Tilling, <br><br> Defendants. | Civil Action No. 3:09-cv-2703-CMC <br><br> OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

Through this action, Plaintiffs Nationwide Mutual Fire Insurance Company and Nationwide Property and Casualty Insurance Company (collectively "Nationwide") seek a declaration that they have no duty to defend or indemnify Defendants Neetu, Inc. ("Neetu") or Mundrey, Inc. ("Mundrey") in an action filed by Defendant Glenn Tilling ("Tilling"). That action ("State Court Action") seeks recovery from Neetu and Mundrey for the death of Tilling's son, Christopher Tilling ("Christopher") based on the theory that Neetu or Mundrey or both contributed to the motorcycle accident which killed Christopher by selling alcohol to the motorcycle's driver.

The matter is now before the court on Nationwide's motion for summary judgment. This motion is founded on an express "dram shop" exclusion contained in the business insurance policies under which Neetu and Mundrey were insured. For the reasons set forth below, the court finds that these provisions unambiguously exclude coverage for the accident at issue. The motion for

summary judgment is, therefore, granted as to Defendant Tilling, the only Defendant to whom the motion was directed. The remaining Defendants are in default.[1]

**STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

---

[1] Defendants Neetu and Mundrey were held in default on January 20, 2010, due to their failure to answer the original complaint. Dkt. No. 20. On March 10, 2010, the complaint was amended to add an additional Defendant (David L. Proveaux), who has subsequently been dismissed, and to correct an error in the name of one of the two Plaintiffs. Dkt. Nos. 40-42 (motion to amend, order granting motion, and amended complaint), 50 (stipulation of dismissal of Defendant Proveaux). Plaintiffs were not required to serve the amended complaint on the defaulted Defendants given that the amended complaint neither asserted any new claims against them nor made any substantive change to the identity of Plaintiffs. *See* Fed. R. Civ. P. 5(a)(2) (addressing service on defaulted parties).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## FACTS

The State Court Action seeks recovery from Neetu and Mundrey based on allegations that employees of Family Mart (a convenience store owned by Neetu or Mundrey or both) sold alcohol to Gary McLemore ("McLemore") throughout the day on February 2, 2008, including one sale at approximately 9:20 p.m., when McLemore was already visibly intoxicated. Dkt. No. 54-1 (State Court Complaint). The complaint in the State Court Action further alleges that these sales contributed to the single-vehicle motorcycle accident which occurred at approximately 9:30 p.m. on February 2, 2008, and resulted in the deaths of McLemore, Christopher, and another passenger. All three were killed when the motorcycle driven by McLemore left the road and hit a tree.

At the time of the accident, Neetu and Mundrey were insured under policies issued by Nationwide.[2] The policies at issue include an exclusion headed "Liquor Liability." This exclusion provides, in relevant part, as follows:

This insurance does not apply to: . . .

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be
held liable by reason of:

---

[2] Although the complaint in the State Court Action is unclear as to ownership, it now appears that the Family Mart is owned solely by Neetu while Mundrey owns the adjacent business, a liquor store, as well as a Blimpie's sandwich shop. For present purposes, the actual ownership is irrelevant as the policies of both Defendants contain the same exclusion.

  (1)  Causing or contributing to the intoxication of any person;

  (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

  (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

  This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing of alcoholic beverages.

*E.g.,* Dkt. No. 52-6 at 29 (Neetu Policy p. 3 of 14).

  Both Neetu and Mundrey are owned by Charan Singh (Singh). In his deposition, Singh testified that his insurance agent did not review the above exclusion with him or explain its meaning. He further stated his understanding that his insurance policy covered whatever might have "happened in the store." Singh dep. at 66-67 (further stating "that's why the people get insurance"). Thus, Singh arguably indicated a subjective belief that all potential sources of liability, including the claims at issue in this action, were covered by his policy despite the presence of multiple, express exclusions.[3] Neither the cited portions of Singh's testimony nor any other proffered evidence, however, suggests that such an erroneous understanding is attributable to Plaintiffs.[4]

---

 [3] In addition to multiple exclusions found in the "Businessowners Liability Coverage Form" (*e.g.*, Dkt. No. 52-6 at 29-34 (including the Liquor Liability Exclusion at 29)), there were multiple endorsements which limited or excluded coverage as to other aspects of the policies (*e.g.*, Dkt. No. 52-6 at 11-15, 18, 20-26). The existence of the various exclusions from liability coverage was, moreover, drawn to the Insureds' attention in the first paragraph on the Businessowners Liability Coverage Form which stated: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." *E.g.*, 52-6 at 27.

 [4] For example, although Tilling quotes testimony which suggests that the insurance agent failed to draw this particular exclusion to Singh's attention, he does not proffer evidence that anyone (associated with Plaintiffs or otherwise) misinformed or misled Singh as to the scope of his policy or meaning of this particular exclusion. Neither does he proffer evidence that anyone prevented Singh from reading and understanding the policy. To the contrary, what evidence is presented

**DISCUSSION**

On its face, the Liquor Liability Exclusion found in the Policies would appear to exclude coverage of all three claims asserted in the State Court Action as each of these claims is dependent on proof that employees of Family Mart (1) caused or contributed to McLemore's intoxication and the resulting accident by (2) selling alcohol to a person who was under the influence of alcohol. *See* Dkt. No. 52-3 at ¶¶ 10-15. Thus, at least two of the circumstances covered by the exclusion appear to apply to all causes of action. The second cause of action also falls within an additional subsection of the Liquor Liability Exclusion as it is dependent on proof that the Insureds or their employees violated S.C. Code Ann. § 61-4-580 which lists acts prohibited by a "holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permitee."

In his opposition memorandum, Tilling argues that there are two possible grounds on which the court might deny summary judgment. The first relates to a possible ambiguity in the language limiting application of the Liquor Liability Exclusion to insureds which are "in the business of . . . selling, serving or furnishing alcoholic beverages." The second relates to the fact that discovery had not ended as of the date the summary judgment motion was filed. These arguments are addressed, in turn, below.

**I.  Ambiguity in the Policy.**

Tilling argues that the Liquor Liability Exclusion is ambiguous, at least as applied to the facts of this case, because the exclusion only applies if the insured is "in the business of . . . selling, serving or furnishing alcoholic beverages." Tilling suggests that this phrase may not apply to

---

suggests that Singh never read the policy, given his apparent belief that it was devoid of *any* exclusions.

5

businesses such as Family Mart, which are not *primarily* in the business of selling alcohol. Dkt. No. 54 at 4-7. At the least, he suggests that this ambiguity raises a genuine issue of material fact, presumably as to the proportion of Family Mart's business attributable to the sale of alcohol.[5]

In support of this argument, Tilling relies on a case in which the South Carolina Supreme Court considered the meaning of the term "business" in the context of applying an exclusion found in an automobile policy. Dkt. No. 54 at 4-5 (citing *Glisson v. State Farm Mut. Auto. Ins. Co.,* 142 S.E.2d 447, 449 (S.C. 1965)). The exclusion at issue barred coverage if the vehicle was being "used in the business or occupation" of the driver at the time of the accident. In deciding whether the exclusion applied, the court cited dictionary definitions for the propositions that the term "business" had "no definite or legal meaning," and that it, as well as the synonym "occupation" were "comprehensive terms which have very broad meaning and may be used in many different connotations." *Glisson*, 142 S.E.2d at 459. The court went on to state as follows:

> "Business" is deemed to be an activity of some continuity, regularity, and permanence, means of material being and livelihood. . . . The commonly accepted meaning of the term is that which occupies the time, attention and labor of men for the purpose of livelihood or profit. . . . An enterprise not conducted as a means of livelihood or for profit generally does not come within the ordinary meaning of such terms.

*Id.*, 142 S.E.2d at 149-50.

---

[5] Tilling does not dispute that the sale of alcohol constituted at least some portion of Family Mart's business at the relevant time. Any contrary assertion would be inconsistent with his position in the State Court Action which is founded on allegations that employees of Family Mart made repeated sales of alcohol to McLemore throughout the day on February 2, 2008. Moreover, his second cause of action is founded on S.C. Code Ann. § 61-4-580 which applies to holders of "a permit authorizing the sale of beer or wine." *See* Dkt. No. 52-3 ¶¶ 27-30. Singh also testified that he sold and continues to sell alcohol at the Family Mart. Singh dep. at 35-36. The record also reflects that Neetu, Inc. held a license to sell beer and wine at the Family Mart covering the period at issue in this action. *See* Dkt. No. 59-1.

6

Applying this definition to the facts of the case before it, the court held that a minister, who was on temporary duty with the National Guard, and was driving a military vehicle as part of that duty, was not engaged in his "business or occupation." In reaching this conclusion the court explained as follows:

> [The Insured's] primary 'business or occupation' is that of a Methodist Minister, and it is from this pursuit that it is assumed he obtains his livelihood. He is not a full-time employee of the South Carolina National Guard, although he does receive compensation for such duty and training in which he may participate.
>
> We are not unmindful of the fact that during the same period a person can engage in more than one business or occupation. However, we are of opinion that participation in National Guard activities, other than on a full-time basis, is not such a 'business or occupation' so as to be encompassed by the policy provisions under consideration. As used in the policy the phrase 'in the business or occupation of the named insured' refers to a man's vocation and not to his avocation.

*Id*. at 450-51.

Assuming without deciding that this narrow ruling could be applied outside the context of an automobile policy, it would not support Tilling's position.[6] This is because the sale of alcohol at issue here was not in any way associated with service as a National Guardsman or other arguably avocational activity. To the contrary, any sales by Family Mart were clearly made for the purpose of generating profit as part of the regular business of that entity.

In any event, the South Carlina Supreme Court has held that similar exclusions are unambiguous and enforceable. For example, in *B.L.G.Enterprises, Inc. v. First Financial Ins. Co.*, the South Carolina Supreme Court held that: "The dram shop exclusion in BLG's policy with First

---

[6] This court has found no subsequent case from the South Carolina court system which cites *Glisson*, and, consequently, none which extend the opinion beyond its narrow ruling which the undersigned interprets as distinguishing service with the National Guard from other part-time work. The handful of federal court cases which cite to or rely on *Glisson*, the latest of which was issued in 1972, do not address this particular exclusion.

7

Financial is almost identical to other liquor liability exclusions in insurance policies covering establishments which distribute alcoholic beverages. *These exclusions have been uniformly found unambiguous and upheld in numerous jurisdictions.*" 514 S.E.2d 327, 331 (S.C. 1999) (emphasis added) (citations omitted). In addition, the South Carolina Court of Appeals has applied similar exclusions to entities such as the Family Mart. *See Federated Mut. Ins. Co. v. Piedmont Petroleum Corp.*, 444 S.E.2d 532 (S.C. App. 1994) (applying similar liquor liability exclusion to policy of convenience store-gas station because the entity was "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages").[7] These decisions, coupled with the plain language of the policy, demonstrate that there is no genuine issue of material fact requiring resolution as Family Mart was indisputably "in the business of . . . selling, . . . or furnishing of alcoholic beverages" at the time it sold alcohol to McLemore.[8]

Tilling also suggests, though he does not expressly argue, that Singh's subjective belief that his policy protected him from all potential sources of liability is sufficient to raise an ambiguity. Singh's subjective belief is, however, irrelevant where, as here, a careful review of the policy would have informed him of the exclusion. *See Ex Parte United Services Auto. Ass'n*, 614 S.E.2d 652, 654 (S.C. App. 2005) ("The doctrine of reasonable expectations, which is essentially that the objectively

---

[7] The exclusions at issue in *B.L.G.* and *Federated Mutual* were worded somewhat differently than the exclusion at issue in this case. However, both included exclusionary language very similar to that set out in Nationwide's Liquor Liability Exclusion.

[8] Tilling has offered no evidence that the sales in question were not in the normal course of Family Mart's business.

8

reasonable expectations of insureds as to coverage will be honored even though a careful review of the terms of the policy would have shown otherwise, has been rejected in South Carolina.").[9]

## II. Stage of Discovery

In addition to arguing that the exclusion is ambiguous, Tilling argues that summary judgment is premature because discovery has not closed. In an attached affidavit, his counsel states that he "believe[s] discoverable information still exists in this case." Affidavit of Darra J. Coleman ¶ 4. Counsel explains: "Before the discovery deadline, potential depositions of fact witnesses in the underlying action may be taken impacting the evaluation of coverage under the subject policies. Specifically, the Nationwide agent who sold Mr. Singh his policies of insurance needs to be deposed." *Id.* ¶ 5.

Despite the absence of any threshold evidence that the agent made any statement to Mr. Singh regarding the Liquor Liability Exclusion,[10] the court deferred resolving the summary judgment motion to allow Tilling to depose the agent. The court extended the discovery deadline for this purpose and allowed Tilling an opportunity to file a supplemental opposition memorandum after the deposition was completed. Tilling has since filed a notice that he does not intend to file a supplemental memorandum. Dkt. No. 64. Tilling's second basis for opposing summary judgment is, therefore, moot.[11]

---

[9] Any subjective belief that the policy covered all potential sources of liability for *anything* that happened in the store could only have been based on a failure to read the policy given the multiple exclusions as well as the clear notice in the first paragraph of the Businessowners Liability Coverage Form that "[v]arious provisions in this policy restrict coverage." *See supra* n.3.

[10] Most critically, nothing in Singh's testimony suggests that the agent mislead him as to the existence or meaning of the exclusion.

[11] Although Nationwide argued that Tilling had failed to provide adequate justification for a delay, it consented to deferral of resolution of the motion until after the completion of discovery.

9

**CONCLUSION**

For the reasons set forth above, the court grants Plaintiffs' motion for summary judgment and directs entry of judgment declaring that Plaintiffs have no obligation to defend or indemnify Defendants Neetu and Mundrey in the State Court Action.

**IT IS SO ORDERED.**

                                                s/ Cameron McGowan Currie
                                                **CAMERON MCGOWAN CURRIE**
                                                **UNITED STATES DISTRICT JUDGE**

**Columbia, South Carolina**
**October 4, 2010**